## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GHEBRESLASSIE FIKADU,<br><br>    *Petitioner*,<br><br>v.<br><br>STEVE KURZDORFER, in his official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security;<br><br>JOSEPH FREDEN, in his official capacity as Warden, Buffalo Federal Detention Facility;<br><br>TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security;<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security;<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; and<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;<br><br>    *Respondents* | **VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS AND COMPLAINT**<br><br>Case No. |

## INTRODUCTION

1.     This case asks whether the government of the United States can indefinitely detain someone who has won immigration relief from deportation. Petitioner Ghebreslassie Fikadu ("Petitioner" or "Mr. Fikadu") remains in ICE custody despite winning his immigration case 18 months ago. On January 31, 2024, an Immigration Judge ("IJ") found that Mr. Fikadu would likely be persecuted and tortured if deported to his country of origin, Eritrea. *See* Exh. A, Order of the

Immigration Judge, dated January 31, 2024 ("IJ Order"). That same day, the Department of Homeland Security ("DHS") waived appeal. *See id.* On that date, Mr. Fikadu was entitled to review for immediate release under the government's longstanding and current policy, the Fear-based Grant Release Policy,[1] which requires the release of such noncitizens absent exceptional circumstances. Likewise, the statutorily prescribed time period in which ICE could have theoretically removed Mr. Fikadu to a country other than Eritrea has expired, yet he is still detained in civil immigration custody with no end in sight.

2. Mr. Fikadu is detained pursuant to 8 U.S.C. § 1231, which governs the detention of noncitizens with a final order of removal that has been withheld or deferred by an IJ due to a substantial risk of persecution or torture in their country of origin. 8 U.S.C. § 1231(a)(1)(B)(i). Mr. Fikadu's removal order and accompanying relief grant became final when both parties waived appeal of the IJ's decision on January 31, 2024. 8 C.F.R. § 1241.1.

3. Mr. Fikadu's continued detention violates 8 U.S.C. § 1231(a), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. He cannot be deported to his country of origin—Eritrea—because he has been granted withholding of removal and relief under the Convention Against Torture ("CAT relief"). 8 C.F.R. § 1208.17. ICE has exhausted efforts to remove Mr. Fikadu to the alternate country where he previously had legal status, Germany. Even if the government identifies a third country willing to

---

[1] *See* Exh. B, U.S. Department of Justice, Immigration and Naturalization Service Memorandum, Re: Detention and Release during the Removal Period of Aliens Granted Withholding or Deferral of Removal (dated April 21, 2000); ICE Memorandum, Re: Detention Policy Where an Immigration Judge has Granted Asylum and ICE has Appealed (dated February 9, 2004); ERO, Re: Reminder on Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal or CAT (dated March 6, 2012); ICE, Re: Reminder: Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal, or Convention Against Torture Protection, and DHS has Appealed (dated June 4, 2021) (collectively "Fear-based Grant Release policy").

accept him, Mr. Fikadu is entitled to notice and the opportunity to seek fear-based protection with respect to that country.

4.       In recent months, the government has stopped complying with its legal obligations and has deported other noncitizens to third countries without notice or opportunity to present their reasonable fear claims. In an attempt to bypass these protections, on March 30, 2025, the government issued an informal procedural policy memo that is blatantly inconsistent with regulations, statutes and due process principles governing third country removals.[2] A district court in Massachusetts issued a class-wide TRO and then a preliminary injunction to protect impacted noncitizens like Mr. Fikadu facing summary removals to third countries where they have genuine CAT claims. *See D.V.D. v. DHS*, --- F. Supp. 3d ----, 2025 WL 1142968 (D. Mass. Apr. 18, 2025).

5.       Even after the *D.V.D.* preliminary injunction was issued, the government defied the district court's orders and sought to summarily remove individuals to third countries such as to a maximum security prison in El Salvador, to Libya, and to South Sudan—without affording them their legally required opportunity to seek mandatory protection from those third countries with the assistance of counsel.

---

[2] Memorandum of DHS Secretary Kristi Noem, *Guidance Regarding Third Country Removals*, March 30, 2025. Available at: https://immigrationlitigation.org/wp-content/uploads/2025/04/43-1-Exh-A-Guidance.pdf. *See also* Maria Sacchetti, et al, "ICE memo outlines plan to deport migrants to countries where they are not citizens," *The Washington Post* (July 13, 2025), available at: https://www.washingtonpost.com/immigration/2025/07/12/immigrants-deportations-trump-ice-memo/ ("Federal immigration officers may deport immigrants to countries other than their own, with as little as six hours' notice, even if officials have not provided any assurances that the new arrivals will be safe from persecution or torture, a top official said in a memo.").

6.      On June 23, 2025, the Supreme Court issued a summary order granting the government's application to stay the nationwide *D.V.D.* injunction. Therefore, at present, there is no longer a separate court order in place to help protect the rights of *D.V.D.* class members like Mr. Fikadu to fully present their mandatory protection claims, with assistance of counsel, prior to removal to third countries.

7.      On July 9, 2025, ICE Acting Director Todd M. Lyons issued guidance to all ICE employees implementing the March 30, 2025 memo. *See* Exh. E, Memo by Todd M. Lyons, Acting Director, to All ICE Employees, Re: Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025), dated July 9, 2025 ("Third Country Removal ICE Memo").

8.      But when seeking a Supreme Court stay of the *D.V.D.* injunction, the government's primary argument was that the district court lacked jurisdiction to enter class-based injunctive relief that it asserted would have the effect of enjoining the operation 8 U.S.C. § 1231 nationally. *See* 8 U.S.C. § 1252(f)(1). Individual litigants face no such jurisdictional obstacle, however, and neither the *D.V.D.* complaint and TRO nor the Supreme Court stay of the *D.V.D.* injunction present any obstacle to Mr. Fikadu's habeas claim that the government cannot apply its unlawful third-country policy memo to him.

9.      When Mr. Fikadu was granted withholding of removal and CAT relief on January 31, 2024, under the government's own Fear-Based Grant Release policy, he was entitled to an immediate review of his custody by Respondents. Because Mr. Fikadu has no criminal history and lacks any "exceptional circumstances," he should have been released at that time.

10.      Pursuant to this policy, the government should have released Mr. Fikadu on an order of supervision while pursuing alternate or third countries of removal, pursuant to the

statutory and regulatory scheme under 8 U.S.C. § 1231. If, at that point, the government identified a third country of removal, it was required to move to reopen Mr. Fikadu's removal proceedings to designate that country as a country of removal. Mr. Fikadu would then be entitled to notice and a meaningful opportunity to respond and raise fear-based claims to relief from removal.

11.     Instead, here, the government seeks to short circuit this process, unlawfully subjecting Mr. Fikadu to indefinite detention while unlawfully applying an informal procedural policy memo to summarily remove him to a country where he faces risk of torture.

12.     Accordingly, Mr. Fikadu respectfully asks this Court to declare that his continued detention by Respondents is unlawful under *Zadvydas*, declare that Respondents' conduct is unconstitutional and violates the Administrative Procedure Act, direct Respondents to follow their own longstanding policy regarding individuals granted immigration relief, and order Mr. Fikadu's immediate release from detention.

13.     Pursuant to 28 U.S.C. § 2243, Mr. Fikadu respectfully requests an order to show cause be issued within three days.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241, as Petitioner is currently in federal immigration custody and seeks habeas corpus relief for ongoing violations of the U.S. Constitution, federal statutes, and applicable regulations.

15.     The case arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., the regulations implementing the INA, the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq.; and 5 U.S.C. § 552 et. seq. Jurisdiction is also proper under 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States.

16.     Additional jurisdiction exists under the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, which guarantees the right to petition for habeas corpus to challenge unlawful executive detention.

17.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, and the Court has supplemental remedial authority under the All-Writs Act, 28 U.S.C. § 1651, to issue such writs as may be necessary to preserve its jurisdiction and protect Petitioner's rights. The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

18.     Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Mr. Fikadu is detained at Buffalo Federal Detention Facility (BFDF) within the jurisdiction of the Western District of New York.

19.     Administrative exhaustion is unnecessary because it would be futile.

## PARTIES

20.     Petitioner Ghebreslassie Fikadu is a native and citizen of Eritrea who was granted withholding of removal and CAT protection by an Immigration Judge on January 31, 2024. He has been continuously detained in the custody of Respondents since March 2023—a period of over 27 months. He is currently incarcerated at BFDF, an immigration detention center in Batavia, New York, where he faces prolonged detention and the deterioration of his mental health.

21.     Respondent Stephen Kurzdorfer is the Acting Field Office Director for the Buffalo Field Office of ICE Enforcement and Removal Operations. He is sued in his official capacity only. Acting Field Office Director Kurzdorfer is charged with exercising authority over the removal operations carried out by ICE in the Buffalo geographic region, which includes the BFDF, and for determinations on whether and where Petitioner is to be detained prior to removal. Respondent Kurzdorfer is a legal custodian of Mr. Fikadu.

22.     Respondent Joseph Freden is sued in his official capacity as Warden of the BFDF, the ICE facility at which Petitioner is currently detained. Respondent Freden is a legal custodian of Mr. Fikadu.

23.     Respondent Todd Lyons in his official capacity as Acting Director U.S. Immigration and Customs Enforcement. Respondent Lyons is a legal custodian of Mr. Fikadu.

24.     Respondent Kristi Noem is named in her official capacity as the Secretary, U.S. Department of Homeland Security. In this capacity, she is responsible for overseeing ICE's day-to-day operations, leading approximately 20,000 ICE employees, including Respondent Kurzdorfer and Lyons. Secretary Noem is the ultimate legal custodian of Petitioner.

25.     Respondent ICE is a component agency of DHS and is responsible for enforcing federal immigration law, including the detention and removal of immigrants.

## STATEMENT OF FACTS

26.     Mr. Fikadu is a 32-year-old native and citizen of Eritrea. He speaks Tigrigna and has limited English proficiency ("LEP"). He fled Eritrea in March 2013 after facing persecution on the basis of his anti-government political opinion and membership in multiple particular social groups. He traveled through Ethiopia, Sudan, Libya, Italy, Switzerland, and then Germany, where he was granted asylum. Mr. Fikadu lived in Germany from May 2014 through February 2023. He then fled Germany after experiencing extensive racism and receiving death threats from people who lived in Germany and were supporters of the Eritrean government.

27.     Mr. Fikadu initially entered the United States and was encountered by border patrol on or about March 13, 2023, in San Diego, California. He was placed in expedited removal proceedings and transferred to a border patrol facility in San Luis, Arizona for approximately three days. He was then transported and detained at the Adams County Correctional Center in Natchez,

Mississippi from March through April 2023. Mr. Fikadu had a credible fear interview and received a positive result on April 7, 2023. He was transferred to the Winn Correctional Center in Winnfield, Louisiana, where he was detained from April 2023 through July 2023. On July 31, 2023, Mr. Fikadu was transferred to BFDF in Batavia, New York, where he remains detained today.

28.     On January 31, 2024, IJ Eric Schultz granted Mr. Fikadu withholding of removal under INA § 241(b)(3), withholding of removal under the CAT, and deferral of removal under the CAT to Eritrea. *See* Exh. A, IJ Order. Because both parties waived appeal, on that date, Mr. Fikadu's administrative order of removal became final.

29.     The government then began removal efforts to Germany and, upon information and belief, submitted a travel document request. On May 13, 2024, ICE issued a decision to continue detention pursuant to its 90-day POCR process. *See* Exh. C, Decision to Continue Detention, dated May 13, 2024 ("90-day POCR Dec."). In issuing its decision, ICE denied release on the basis that Mr. Fikadu purportedly poses a "flight risk." *Id.* at 1. The decision notes that "the Government of Germany has indicated it will issue a travel document for your return to Germany." *Id.* at 2.

30.     Five months later, on October 7, 2024, ICE issued a decision to continue detention pursuant to its 180-day POCR process. *See* Exh. D, Decision to Continue Detention, dated October 7, 2024 ("180-day POCR Dec."). In this decision, the government again asserted that "ICE is currently working with the government of Germany to secure a travel document for your removal from the United States." *Id.* at 1. As of the date of this filing, despite Mr. Fikadu's efforts to comply with ICE, ICE has failed to secure travel documents for his removal to Germany.

31.     Meanwhile, Mr. Fikadu has been subjected to continuous, punitive detention by ICE since March 2023—a period of over 27 months. This prolonged detention has resulted in the deterioration of Mr. Fikadu's mental health. Mr. Fikadu is the only detained person at BFDF in his

unit who speaks Tigrigna, and as a result, he has suffered from significant linguistic isolation. As a result, Mr. Fikadu began experiencing auditory and visual hallucinations and sought mental health treatment from providers at BFDF.

32.    At BFDF, the government has also repeatedly subjected Mr. Fikadu to punitive and unlawfully retaliatory placement in solitary confinement. In June 2024, Mr. Fikadu participated in an eight-day hunger strike, protesting his ongoing detention and ICE's failure to remove him to Germany. For his protected speech, he was placed in solitary confinement in the Segregated Housing United ("SHU") at BFDF for eight days. During this time, he was isolated alone in a cell for 24 hours per day and was denied access to the shower for eight days. On the eighth day of his hunger strike, an ICE officer came to his cell and told him "If you do not eat, you will die and be deported to the sky." Mr. Fikadu requested to speak to the ICE officer through a Tigrigna interpreter, but the officer refused. Fearful of further solitary confinement, Mr. Fikadu gave up his hunger strike following this interaction with ICE.

33.    Five months later, still subjected to indefinite detention, Mr. Fikadu engaged in a second hunger strike in November 2024, again advocating for his release or deportation to Germany. Again, for his protected speech, he was subjected to ten days of solitary confinement in a cell in the medical unit at BFDF, where he was held for 24 hours per day. On the ninth day of the hunger strike, an ICE officer met with Mr. Fikadu and claimed that removal efforts to Germany were in progress. Mr. Fikadu halted his hunger strike but received no further information from the government and has remained indefinitely detained since then, for eight months and counting.

34.    Upon information and belief, as of the date of this filing, ICE has failed to obtain a travel document to remove Mr. Fikadu to Germany and has not put forward additional alternate or third countries of removal.

## LEGAL FRAMEWORK

**Withholding of Removal and Relief under the Convention Against Torture.**

35.     Noncitizens in immigration removal proceedings can seek three main forms of relief based on their fear of returning to their home country: asylum, withholding of removal, and CAT relief. Noncitizens may be ineligible for asylum for several reasons, including failure to apply within one year of entering the United States. *See* 8 U.S.C. § 1158(a)(2).

36.     While statutes place certain restrictions on eligibility to seek asylum and withholding of removal, *see e.g.* 8 U.S.C. § 1158(c)(2), 8 U.S.C. § 1231(b)(3)(B), there are no restrictions on eligibility to apply for CAT deferral of removal. *See* Foreign Affairs 11 Reform Restructuring Act of 1998 (FARRA) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16(c), 208.17(a), 1208.16(c), 1208.17(a); 28 C.F.R. § 200.1. Withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT protection are both mandatory and country-specific. *Id*. CAT prohibits removal to any country where there is a substantial risk of torture, 28 C.F.R. § 200.1, and individuals are eligible for CAT protection no matter the basis of their removal order. *See* 8 C.F.R. §§ 208.16–208.18, 208.31, 241.8(e), 1208.16–1208.18.

37.     To be granted CAT relief, a noncitizen must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). An applicant for CAT relief must show a higher likelihood of torture than the likelihood of persecution an asylum applicant must demonstrate. *See id.*

38.     When an IJ grants a noncitizen withholding or CAT relief, the IJ issues a removal order and simultaneously withholds or defers that order with respect to the country or countries for which the noncitizen demonstrated a sufficient risk of persecution or torture. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2283 (2021). Once withholding or CAT relief is granted, either

party has the right to appeal that decision to the BIA within 30 days. *See* 8 C.F.R. § 1003.38(b). If both parties waive appeal or neither party appeals within the 30-day period, the withholding or CAT relief grant and the accompanying removal order become administratively final. *See id.* § 1241.1.

39.    An IJ may only terminate a grant of CAT protection based on evidence that the person will no longer face torture. DHS must move for a new hearing and provide evidence "relevant to the possibility that the [noncitizen] would be tortured in the country to which removal has been deferred and that was not presented at the previous hearing." 8 C.F.R. §§ 208.17(d)(1), 1208.17(d)(1). If a new hearing is granted, the IJ must provide notice "of the time, place, and date of the termination hearing," and must inform the noncitizen of the right to "supplement the information in his or her initial [withholding or CAT] application" "within 10 calendar days of service of such notice (or 13 calendar days if service of such notice was by mail)." 8 C.F.R. §§ 208.17(d)(2), 1208.17(d)(2).

## Detention Of Noncitizens Granted Withholding Of Removal Or Relief Under The Convention Against Torture.

40.    8 U.S.C. § 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)-(6). The "removal period" begins once a noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B). The removal period lasts for 90 days, during which ICE "shall remove the [noncitizen] from the United States" and "shall detain the [noncitizen]" as it carries out the removal. 8 U.S.C. § 1231(a)(1)-(2). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period" if they meet certain criteria, such as being inadmissible or deportable under specified statutory categories. 8 U.S.C. § 1231(a)(6) (emphasis added).

41.     To avoid "indefinite detention" that would raise "serious constitutional concerns," the Supreme Court in *Zadvydas* construed § 1231 to contain an implicit time limit. 533 U.S. at 682. *Zadvydas* dealt with two noncitizens who could not be removed to their home country or country of citizenship due to bureaucratic and diplomatic barriers. The Court held that § 1231 authorizes detention only for "a period reasonably necessary to bring about the [noncitizen]'s removal from the United States." *Id.* at 689. Six months of post-removal order detention is considered "presumptively reasonable." *Id.* at 701.

42.     The Court underscored that civil detention is thus only constitutionally permissible in "special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (citations omitted) (internal quotations omitted). The Court thus concluded that, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." *Id.*; *Id.* at 701 ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.").

43.     DHS regulations provide that, by the end of the 90-day removal period that ensues upon a noncitizen's removal order becoming final, the local ICE field office with jurisdiction over the noncitizen's detention must conduct a custody review to determine whether the noncitizen should remain detained. *See* 8 C.F.R. § 241.4(c)(1), (k)(1)(i) ("Prior to the expiration of the removal period, the district director . . . shall conduct a custody review . . ."). The Field Office Director, or their delegate, makes the final custody decision based on recommendations offered by lower-level officers. In making this custody determination, ICE considers several factors, including the availability of travel documents for removal. *Id.* § 241.4(e). If the factors in § 241.4 are met, ICE must release the noncitizen under conditions of supervision. *Id.* § 241.4(j)(2).

44.    To comply with *Zadvydas*, DHS issued additional regulations in 2001 that established "special review procedures" to determine whether detained noncitizens with final removal orders are likely to be removed in the reasonably foreseeable future. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56,967 (Nov. 14, 2001). While 8 C.F.R. § 241.4's custody review process remained largely intact, subsection (i)(7) was added to include a supplemental review procedure that ICE HQ must initiate when "the [noncitizen] submits, or the record contains, information providing a substantial reason to believe that removal of a detained [noncitizen] is not significantly likely in the reasonably foreseeable future." *Id.* § 241.4(i)(7).

45.    Under this procedure, ICE HQ evaluates the foreseeability of removal by analyzing factors such as the history of ICE's removal efforts to third countries. *See id.* § 241.13(f). If ICE HQ determines that removal is not reasonably foreseeable but nonetheless seeks to continue detention based on "special circumstances," it must justify the detention based on narrow grounds such as national security or public health concerns, *id.* § 241.14(b)-(d), or by demonstrating by clear and convincing evidence before an IJ that the noncitizen is "specially dangerous." *Id.* § 241.14(f).

46.    The Supreme Court has held that this period is limited to "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. This is because the primary purpose of post-order detention is to "assure[e] the [noncitizen's] presence at the moment of removal." *Id.* at 699. This government interest in "preventing flight," however, "is weak or nonexistent where removal seems a remote possibility at best." *Id.* at 690.

47.     If a person "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either "respond with evidence sufficient to rebut that showing" or release them from detention under supervision. *Id.* at 701. Respondents do not meet this burden if they are unable "to provide any reasonable prediction about when deportation might happen . . . ." *Singh v. Whitaker*, 362 F.Supp.3d 93, 101-02 (W.D.N.Y. 2019) appeal withdrawn sub nom. *Singh v. Barr*, No. 19-729, 2019 WL 2590582 (2d Cir. May 1, 2019) (release merited where "nothing in the record suggests that DHS is now any closer to obtaining the necessary documents than it was when [Petitioner] first was taken into custody"). Nor are the government's "good faith efforts" to remove an individual sufficient to meet this standard. *Zadvydas*, 533 U.S. at 702. As the length of detention grows, the period of time that would be considered the "reasonably foreseeable future" conversely shrinks. *Id.* at 701.

48.     If a court finds removal is reasonably foreseeable, the court may still order release, and may consider the risk posed by the individual to community safety in determining whether to do so. *Id.* at 700. While dangerousness may justify immigrant detention in certain cases, the Court "uph[o]ld[s] preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 690-91.

**The Government's Longstanding Fear-based Grant Release Policy**

49.     ICE's longstanding policy (hereinafter the "Fear-based Grant Release Policy") is to release noncitizens immediately following a grant of CAT protection absent exceptional circumstances. *See* Exh. B, Fear-based Grant Release Policy. "In general, it is ICE policy to favor the release of [noncitizens] when have been granted protection by an immigration judge, absent exceptional concerns…" and "[p]ursuant to longstanding policy, absent exceptional circumstances… noncitizens granted asylum, withholding of removal, or CAT protection by an

immigration judge *should* be released…" *Id.* (emphasis added). This policy specifically instructs the local ICE field office to make an individualized determination whether to keep a noncitizen detained based on exceptional circumstances. *Id.* ("[T]he Field Office Director must approve any decision to keep a [noncitizen] who received a grant of protection in custody.").

50.     In 2000, the then-Immigration and Naturalization Service ("INS") General Counsel issued a memorandum clarifying that 8 U.S.C. § 1231 authorizes but does not require the detention of noncitizens granted withholding of removal or CAT relief. *Id.* A 2004 ICE memorandum turned this acknowledgement of authority into a presumption, stating that "it is ICE policy to favor the release of [noncitizens] who have been granted protection relief by an immigration judge, absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law to detain." *Id.* Further, this memorandum states that "in all cases, the Field Office Director must approve a decision to keep a [noncitizen] granted protection relief in custody pending appeal." *Id.*

51.     ICE leadership subsequently reiterated this policy in a 2012 announcement, clarifying that the 2000 and 2004 ICE memorandums are "still in effect and should be followed" and that "[t]his policy applies at all times following a grant of protection, including during any appellate proceedings and throughout the removal period." *Id.*

52.     Finally, in 2021, Acting ICE Director Tae Johnson circulated a memorandum to all ICE employees reminding them of the "longstanding policy" that "absent exceptional circumstances… [noncitizens] granted asylum, withholding of removal, or CAT protection by an immigration judge *should* be released…" *Id.* (emphasis added). Director Johnson clarified that "in considering whether exceptional circumstances exist, prior convictions alone do not necessarily indicate a public safety threat of danger to the community. Rather, the individual facts and

circumstances of the case, including extensiveness, seriousness, and recency of the criminal activity, along with any evidence of rehabilitation, should be considered in making such determination." *Id.*

53.     In *Rodriguez Guerra v. Perry*, No. 1:23-cv-1151 (E.D. Va.), a group of noncitizens detained by ICE in the Eastern District of Virginia filed suit in 2023 on behalf of themselves and a class claiming systemic violation of the same policies by the Washington, D.C., Field Office, which has jurisdiction over detention centers in Virginia. The suit alleged the Washington, D.C., Field Office was engaging in a widespread violation of the *Accardi* doctrine by ignoring the policies at issue here. That case settled in 2024. Although ICE did not admit liability, the Washington, D.C., Field Office agreed to review all detained noncitizens in their custody who had been granted relief for release pursuant to the policies described above.[3]

**Third Country Removal Procedures**

54.     When a noncitizen has a final withholding or CAT relief grant, they cannot be removed to the country or countries for which they demonstrated a sufficient likelihood of persecution or torture. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.17(b)(2). While ICE is authorized to remove noncitizens who were granted withholding or CAT relief to alternative countries, *see* 8 U.S.C. § 1231(b); 8 C.F.R. § 1208.16(f), the removal statute specifies restrictive criteria for identifying appropriate countries. Noncitizens can be removed, for instance, to the

---

[3] The settlement goes on to offer this definitional language about "exceptional circumstances": "In considering whether exceptional circumstances exist, prior convictions alone do not necessarily indicate a public safety threat or danger to the community. Rather, the individual facts and circumstances of the case, including extensiveness, seriousness, and recency of the criminal activity, along with any evidence of rehabilitation, should be considered in making such determinations." *Rodriguez Guerra v. Perry* Settlement Agreement at 6, *available at* https://www.acluva.org/sites/default/files/field_documents/redacted_settlement_agreement_signed_v.1_final_07282024_redacted_002.pdf.

country "of which the [noncitizen] is a citizen, subject, or national," the country "in which the [noncitizen] was born," or the country "in which the [noncitizen] resided" immediately before entering the United States. 8 U.S.C. § 1231(b)(2)(D)-(E).

55.    Paragraphs (b)(1) and (b)(2) of 8 U.S.C. § 1231 make any designation of the country of removal, whether by DHS or an immigration judge (IJ), "[s]ubject to paragraph (3)." *Id.* Paragraph (3), entitled "Restriction on removal to a country where [noncitizen's] life or freedom would be threatened," reads:

> Notwithstanding paragraphs (1) and (2), the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.

*Id*. § 1231(b)(3)(A); *see also Jama*, 543 U.S. at 348. Likewise, where DHS seeks to remove a noncitizen to a country where the noncitizen has a lesser connection (or no connection), regulations implementing CAT prohibit deportation to a country where the noncitizen will face torture. 8 C.F.R. §§ 208.16(c)–208.18, 1208.16(c)–1208.18.

56.    If ICE identifies an appropriate alternative country of removal, the noncitizen must have notice and an opportunity to seek relief from removal to that country. *See Jama v. ICE*, 543 U.S. 335, 348 (2005) ("If [noncitizens] would face persecution or other mistreatment in the country designated under § 1231(b)(2), they have a number of available remedies: asylum, § 1158(b)(1); withholding of removal, § 1231(b)(3)(A); [and] relief under an international agreement prohibiting torture, *see* 8 CFR §§ 208.16(c)(4), 208.17(a) (2004) . . ."); *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) (finding that "last minute" designation of alternative country without meaningful opportunity to apply for protection "violate[s] a basic tenet of constitutional due process"); *Romero v. Evans,* 280 F. Supp. 3d 835, 848 n.24 (E.D. Va. 2017) ("DHS could not immediately remove petitioners to a third country, as DHS would first need to give petitioners

notice and the opportunity to raise any reasonable fear claims."), *rev'd on other grounds, Guzman Chavez*, 141 S. Ct. 2271; cf. *Protsenko v. U.S. Att'y Gen*., 149 F. App'x 947, 953 (11th Cir. 2005) (per curiam) (permitting designation of third country where individuals received "ample notice and an opportunity to be heard").

57.    The statute and regulations implement Congress' designation scheme in a way that ensures that noncitizens receive meaningful notice and an opportunity to present a fear-based claim. In removal proceeding under 8 U.S.C. § 1229(a) (commonly referred to as "Section 240" proceedings), individuals receive notice of all countries to which they may be deported. The regulations mandate that the IJ "shall notify" the individual of the designated country of removal and "shall identify for the record" all alternative countries to which the person may be removed. 8 C.F.R. § 1240.10(f).

58.    When the government commences removal proceedings against a noncitizen under 8 U.S.C. § 1229(a), it typically designates a country of removal to which it is seeking to remove the noncitizen. The IJ then officially designates the country suggested by the government. Those who have been deported and subsequently return to the United States without inspection can have their removal orders reinstated by DHS officers. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8. The reinstatement regulations contemplate notice of a designated country. *See* 8 C.F.R. § 241.8(e) (referring to "the country designated in [the reinstatement] order").

59.    Likewise, DHS officers can issue an administrative removal order to nonpermanent residents with an aggravated felony conviction. *See* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1. In this process, the noncitizen may designate "the country to which he or she chooses to be deported" and the "deciding [DHS] officer shall designate the country of removal." 8 C.F.R. § 238.1(b)(2)(ii), (f)(2). Consistent with the United States' commitment to *non-refoulement*, the government must

provide individuals who express a fear of return to the designated country with an opportunity to demonstrate a reasonable fear of persecution or torture in interviews before asylum officers, and those who do so, are eligible to apply for withholding of removal under 8 U.S.C. § 1231(b)(3) and/or CAT protection in what are known as withholding-only proceedings. *See* 8 C.F.R. §§ 241.8(e), 238.1(f)(3); *see also* 8 C.F.R. §§ 208.31, 1208.31.

60.    If the government seeks to remove an individual granted withholding or CAT to a different country—a country not designated by the removal order—the INA and due process principles require that the noncitizen have a meaningful opportunity seek fear-based protection from removal to that country. Specifically, if ICE were to attempt to remove a noncitizen to a country not designated on their removal order, the noncitizen's removal proceedings would have to be reopened for the IJ to designate the alternative country of removal and for the noncitizen to apply for any fear-based relief in withholding-only proceedings. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006-10 (W.D. Wash. 2019); *accord* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1240.10(f); 8 C.F.R. § 1240.11(c)(1)(i).

61.    Notice is only meaningful if it is presented sufficiently in advance of the deportation to stop the deportation, is in a language the person understands, and provides for an automatic stay of removal for a time period sufficient to permit the filing of a motion to reopen removal proceedings so that a third country for removal may be designated as required under the regulations and the noncitizen may present a fear-based claim. *Andriasian*, 180 F.3d at 1041; *Aden*, 409 F. Supp. 3d at 1009 ("A noncitizen must be given sufficient notice of a country of deportation [such] that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.").

62.    Further, an opportunity to present a fear-based claim is only meaningful if the noncitizen is not deported before removal proceedings are reopened. *See Aden*, 409 F. Supp. 3d at 1010 (holding that merely giving petitioner an opportunity to file a discretionary motion to reopen "is not an adequate substitute for the process that is due in these circumstances" and ordering reopening); *Dzyuba v. Mukasey*, 540 F.3d 955, 957 (9th Cir. 2008) (remanding to BIA to determinate whether designation is appropriate).

63.    Providing such notice and opportunity to present a fear-based claim prior to deportation also implements the United States' obligations under international law. *See* United Nations Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150; United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267; Refugee Act of 1980, Pub. L. 96-212, § 203(e), 94 Stat. 102, 107 (codified as amended at 8 U.S.C. § 1231(b)(3)); *INS v. Stevic*, 467 U.S. 407, 421 (1984) (noting that the Refugee Act of 1980 "amended the language of [the predecessor statute to § 1231(b)(3)], basically conforming it to the language of Article 33 of the United Nations Protocol").

64.    Meaningful notice and opportunity to present a fear-based claim prior to deportation to a country where a person fears persecution or torture are also fundamental due process protections under the Fifth Amendment. *See, e.g., Andriasian*, 180 F.3d at 1041. The federal government has repeatedly acknowledged these obligations in model notices of removal to other than designated countries. And, consistent with the above authorities and practices, at oral argument in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), the Assistant to the Solicitor General represented that the government must provide a noncitizen with notice and an opportunity to present fear-based claims, including claims for mandatory CAT protection, before that noncitizen can be deported to a non-designated third country. *See* Transcript of Oral Argument at

20-21, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021); *see also* Transcript of Oral Argument at 33, *Riley v. Bondi*, 23-1270 (2025) ("We would have to give the person notice of the third country and give them the opportunity to raise a reasonable fear of torture or persecution in that third country.").

65.    On March 23, 2025, a putative nationwide class challenged this government practice in *D.V.D. v. DHS*, and obtained a temporary restraining order and later a preliminary injunction for a certified class,[4] blocking third country removals without notice and a meaningful opportunity to seek CAT protection. Under the *D.V.D.* injunction, the government was required to provide class members the following:

- Written notice of the third country in a language that the noncitizen can understand to the individual and their attorney, if any,
- An automatic 10-day stay between notice and any actual removal,
- Ability to raise a fear-based claim for CAT protection prior to removal, and:
    - If the noncitizen demonstrates "reasonable fear" of removal to the third country, DHS must move to reopen the noncitizen's immigration proceedings.
    - If the noncitizen does not demonstrate a "reasonable fear" of removal to the third country, DHS must provide a meaningful opportunity, and a minimum of fifteen days, for the noncitizen to seek reopening of their immigration proceedings.

*See D.V.D. v. DHS*, --- F. Supp. 3d ---, 2025 WL 1142968, at *24 (D. Mass. Apr.18, 2025).[5]

---

[4] The certified *D-V-D-* class is:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*D.V.D. v. DHS*, --- F. Supp. 3d ---, 2025 WL 1142968, at *11 (D. Mass. Apr. 18, 2025).

[5] *See also* Electronic Order – Amended Preliminary Injunction, Dkt. 86 (clarifying applicability to Guantanamo); Memorandum and Order on Plaintiffs' Motion for Emergency Relief Dkt. 91 (clarifying that removals without required protections to Libya would have violated the

66.     At multiple points when the TRO and then later the injunction were in place, the government failed to comply with the district court's orders.[6] On March 31, 2025, at least six *D.V.D.* class members were removed from Guantanamo to El Salvador on a DOD plane, in violation of the TRO. The district court subsequently amended its preliminary injunction to clarify that Defendants must comply with the injunction prior to removing any class member from Guantanamo and prior to ceding custody or control to another agency in a manner that prevents provision of the procedural protections in the injunction. *See D.V.D. v. DHS*, No. 1:25-cv-10676-BEM (D. Mass. Apr. 30, 2025), ECF No. 86.

67.     On May 7, 2025, the government attempted to deport a flight of class members to Libya without compliance with the preliminary injunction, leading to an emergency TRO motion. The district court promptly issued a memorandum reiterating the terms of its preliminary injunction and making clear that any such removals would violate it. *See D.V.D. v. DHS*, No. 1:25-cv-10676-BEM (D. Mass. May 7, 2025), ECF No. 91.

68.     On May 20, 2025, while the government was again in the process of removing class members in violation of the preliminary injunction (this time to South Sudan), the plaintiffs moved for another emergency TRO, leading the district court order that the government to retain custody of the class members and provide the preliminary injunction's protections. *See D.V.D. v. DHS*, No. 1:25-cv-10676-BEM (D. Mass. May 20, 2025), ECF No. 116.

---

preliminary injunction); Memorandum on Preliminary Injunction, Dkt. 118 (providing a ten-day stay between notice and removal).

[6] Soon after the *D.V.D.* complaint had been filed and one week after the district court entered its TRO, DHS responded with an informal policy memo implementing new procedures for conducting reasonable fear screenings and third-country removals that fall far short of the binding statutory, regulatory, and due process protections described above and enforced by the district court's TRO. *See* Memorandum of DHS Secretary Kristi Noem, *Guidance Regarding Third Country Removals*, March 30, 2025 ("March 30, 2025 memo"). Available at: https://immigrationlitigation.org/wp- content/uploads/2025/04/43-1-Exh-A-Guidance.pdf.

69.     On June 23, 2025, the Supreme Court issued a summary order that did not provide reasoning, but granted the government's request to stay the district court's preliminary injunction in *D.V.D. See DHS v. D.V.D.*, No. 24A1153, 2025 WL 1732103 (U.S. June 23, 2025); *see also DHS v. D.V.D.*, No. 24A1153, 2025 WL 1832186 (U.S. July 3, 2025) (Order on motion for clarification finding that the preliminary injunction had been stayed in full by the Supreme Court, and thus, District Court could not enforce the injunction by issuing a remedial order).

70.     As a result, at this time, the district court's class-based preliminary injunction in *D.V.D.* is no longer constraining the government from carrying out more unlawful third country removals, as it had both during and after the district court entered and restated its injunctive order.[7]

## CLAIMS FOR RELIEF

## COUNT I

## MR. FIKADU'S UNLAWFUL DETENTION VIOLATES THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1231(a)(6)

71.     Petitioner realleges and incorporates by reference the paragraphs above.

72.     The government is currently detaining Mr. Fikadu pursuant to 8 U.S.C. § 1231(a)(6), which governs the detention of noncitizens who have an administratively final order of removal. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas*, authorizes detention

---

[7] On June 24, 2025, a former high-level official with the Department of Justice's Office of Immigration Litigation filed a protected whistleblower claim alleging that high-level DOJ officials conspired to violate the *D.V.D.* TRO. The disclosure describes efforts to feign ambiguity in an unambiguous order, failing to disseminate the fact and terms of the injunction, and purposefully failing to respond to Plaintiffs' inquiries. *Protected Whistleblower Disclosure of Erez Reuveni Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, and Substantial and Specific Danger to Health and Safety at the Department of Justice* at 16- 21. Available at: https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-_Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf.

only for "a period reasonably necessary to bring about the [noncitizen's] removal from the United States." 533 U.S. at 689.

73.    Mr. Fikadu's continued detention violates § 1231(a)(6) because there is not a substantial likelihood that the government will be able to carry out his removal in the reasonably foreseeable future. *See Senor v. Barr*, 401 F.Supp.3d 420, 430 (W.D.N.Y. 2019) (articulating that "the passage of time" combined with "the government being no closer to repatriating a detainee than they were [when] they first took him into custody" can be sufficient to satisfy the noncitizen-petitioner's burden) (quoting *Singh v. Whitaker*, 362 F.Supp.3d 93, 102-03 (W.D.N.Y. 2019), appeal withdrawn sub nom. *Singh v. Barr*, No. 19-729, 2019 WL 2590582 (2d Cir. May 1, 2019)) (internal alterations and quotation marks omitted).

74.    At 18 months post-final order of removal, the government must now bear the burden to justify Mr. Fikadu's continued detention because there are multiple "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. First, Mr. Fikadu cannot be deported to his only designated country of removal, Eritrea, the only country of which he is a citizen, because he has a final grant of withholding of removal to Eritrea. Second, although Mr. Fikadu previously had legal status in Germany, the government's protracted efforts to remove him to Germany remain fruitless. Third, should the government seek to remove Mr. Fikadu to any third country, it must afford Mr. Fikadu mandatory protection from torture and persecution. As discussed *supra*, the binding regulations, statutes, and due process require the government to provide Mr. Fikadu with an individualized and robust process, as set forth in the now stayed *D.V.D.* class injunction.

75.    Accordingly, unless Respondents can supply sufficient evidence to the contrary, they should immediately release Mr. Fikadu from their custody because his "continued detention

24

[has become] unreasonable and [is] no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-

700; *Vaskanyan v. Janecka*, 5:25-cv-01475-MRA-AS, 2025 U.S. Dist. LEXIS, 2025 LX 218452,

at * (C.D. Cal., Jul 18, 2025) (granting a writ of habeas corpus where the countries designated for

removal would not accept petitioner and "ICE d[id] not know whether and when the information

requested by the [alternate third country] Consulate can be obtained or when it can expect to

receive a response from the [alternate third country] consulate"). The government interest in

"preventing flight [] is weak or nonexistent where removal seems a remote possibility at best."

*Zadvydas*, 533 U.S. at 690.

76.     Therefore, Petitioner will not be removed from the United States in the "reasonably

foreseeable future," and his continued detention violates 8 U.S.C. § 1231(a). *Id.* at 701.

<u>COUNT II</u>

**MR. FIKADU'S UNLAWFUL DETENTION DESPITE HIS GRANT OF
WITHHOLDING AND CAT RELIEF VIOLATES THE ADMINISTRATIVE
PROCEDURE ACT AND THE *ACCARDI* DOCTRINE**

77.     Petitioner realleges and incorporates by reference the paragraphs above.

78.     The Administrative Procedure Act empowers courts to set aside agency action that

is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in

excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C.

§ 706(2)(A), (C).

79.     Under the *Accardi* doctrine, agencies are bound to follow their own rules that affect

the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise

discretionary decisions. *See Accardi*, 347 U.S. at 260 (holding that the BIA must follow its own

regulations in its exercise of discretion); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the

rights of individuals are affected, it is incumbent upon agencies to follow their own procedures…

even where the internal procedures are possibly more rigorous than otherwise would be required.").

80.    The requirement that an agency follow its own policies is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d. 1991). Even an unpublished policy binds the agency if "an examination of the provision's language, its context, and any available extrinsic evidence" supports the conclusion that it is mandatory. *Doe v. Hampton*, 566 F.2d 265, 281 (D.C. Cir. 1977); *see also Morton*, 415 U.S. at 235-36 (applying *Accardi* to a violation of internal agency manual).

81.    When agencies fail to adhere to their own policies as required by *Accardi*, courts typically follow one of two courses of action. The first is to frame the violation as arbitrary, capricious, and contrary to law under the APA. *See Damus v. Nielson*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018) ("It is clear, moreover, that [*Accardi*] claims may arise under the APA"). The second is to consider it a due process violation. *See Sameena Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.") (internal quotes omitted).

82.    Prejudice is generally presumed when an agency violates its own policy. See *Montilla*, 926 F.2d at 167 ("We hold that a [noncitizen] claiming the INS has failed to adhere to its own regulations… is not required to make a showing of prejudice before [they are] entitled to relief. All that need be shown is that the subject regulations were for the [noncitizen's] benefit and that the INS failed to adhere to them."); *Heffner*, 420 F.2d at 813 ("The *Accardi* doctrine furthermore requires reversal irrespective of whether a new trial will produce the same verdict.").

83.     To remedy an *Accardi* violation, a court may direct the agency to properly apply its policy. *See Damus*, 313 F. Supp. 3d at 343 ("[T]his Court is simply ordering that Defendants do what they already admit is required."). Or a court may apply the policy itself and order relief consistent with the policy. *See Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (scheduling bail hearing to review petitioners' custody under ICE's standards because "it would be particularly unfair to require that petitioners remain detained . . . while ICE attempts to remedy its failure.").

84.     As of January 31, 2024, Mr. Fikadu was eligible for release pursuant to ICE's Fear-based Grant Release Policy because an IJ granted him withholding and CAT relief. Upon information and belief, he received no review for release at that time. The only custody reviews Mr. Fikadu has received are standard and insufficient POCRs by ICE.

85.     ICE violated the APA when it took agency action with regard to Mr. Fikadu's continued detention despite the existence of their policy favoring release for noncitizens granted withholding of removal and CAT relief such as Mr. Fikadu.

## COUNT III

### MR. FIKADU'S UNLAWFUL DETENTION VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION

86.     Petitioner realleges and incorporates by reference the paragraphs above.

87.     The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Cont. amend. V. To comply with the Due Process Clause, civil detention must "bear[] a reasonable relation to the purpose for which the individual was committed," which for immigration detention is removal from the United States. *Demore v. Kim*, 538 U.S. 510, 527 (2003) (citing *Zadvydas*, 533 U.S. at 690). Furthermore, "[t]he

fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted).

88.    Petitioner's continued detention pending supposed third country removal efforts, without notice of whether and to which countries ICE is actually attempting to remove him, violates his due process rights. *See, e.g., Vaskanyan*, 2025 U.S. Dist. LEXIS, 2025 LX 218452, at *16 n.1 (noting that "[a]ny efforts to remove [p]etitioner to a third country must comport with due process. As [r]espondents admitted . . . , ICE is required as a matter of law and protocol to afford [p]etitioner a meaningful opportunity to contest his removal to a third country on the basis of fear of persecution or torture").

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a.    Assume jurisdiction over this matter;

b.    Enjoin Respondents from transferring Mr. Fikadu away from the jurisdiction of this District pending these proceedings;

c.    Grant a writ of habeas corpus directing Respondents to immediately release Mr. Fikadu from their custody;

d.    Declare that Respondents' actions or omissions violate the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6), the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

e.    Use its authority under 28 U.S.C. § 2243 to order the Respondents to file a return within three days, unless they can show good cause for additional time;

    f.       Award Petitioner all costs incurred in maintaining this action, including attorneys'

            fees under the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

            on any other basis justified by law; and

    g.       Grant any other further relief this Court deems just and proper.

Respectfully submitted,

DATED:  August 5, 2025
           Washington, DC

/s/ Sarah E. Decker
Sarah E. Decker
Staff Attorney
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
T: (646) 289-5593
E: decker@rfkhumanrights.org

Sarah T. Gillman
Director of Strategic U.S. Litigation
Robert F. Kennedy Human Rights
88 Pine St., 8th Fl., Ste. 801
New York, NY 10005
T: (646) 289-5593
E: gillman@rfkhumanrights.org

Kerry Q. Battenfeld
Litigation Coordinator
Prisoners' Legal Services of New York
14 Lafayette Square, Suite 510
Buffalo, NY 14203
Tel.: 716-844-8266
Fax: 716-854-1008
Email: kbattenfeld@plsny.org

*Pro Bono Counsel for Petitioner*

## <u>28 U.S.C. § 2242 VERIFICATION STATEMENT</u>

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys.  I have discussed with the Petitioner the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in this Complaint and Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.


DATED:   August 5, 2025            */s/ Sarah Decker*
              Washington, DC            Sarah Decker, Esq.
                                                 Staff Attorney
                                                 Robert F. Kennedy Human Rights
                                                 1300 19th Street NW, Suite 750
                                                 Washington, DC 20036
                                                 T:(646) 289-5593
                                                 E: decker@rfkhumanrights.org

                                                 *Pro Bono Counsel for Petitioner*

## EXHIBITS

A             Order Of The Immigration Judge, Dated January 31, 2024 ("IJ Order")

B             U.S. Department Of Justice, Immigration And Naturalization Service Memorandum, Re: Detention And Release During The Removal Period Of Aliens Granted Withholding Or Deferral Of Removal (Dated April 21, 2000); Ice Memorandum, Re: Detention Policy Where An Immigration Judge Has Granted Asylum And Ice Has Appealed (Dated February 9, 2004); ERO, Re: Reminder On Detention Policy Where An Immigration Judge Has Granted Asylum, Withholding Of Removal Or Cat (Dated March 6, 2012); Ice, Re: Reminder: Detention Policy Where An Immigration Judge Has Granted Asylum, Withholding Of Removal, Or Convention Against Torture Protection, And DHS Has Appealed (Dated June 4, 2021) (Collectively "Fear-based Grant Release Policy")

C             U.S. Immigration and Customs Enforcement, Decision to Continue Detention, Dated May 13, 2024 ("90-Day POCR Dec.")

D             U.S. Immigration and Customs Enforcement, Decision to Continue Detention, Dated October 7, 2024 ("180-Day POCR Dec.")

E             U.S. Immigration and Customs Enforcement, Memo by Todd M. Lyons, Acting Director, to All ICE Employees, Re: Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025), dated July 9, 2025 ("Third Country Removal ICE Memo")

## <u>CERTIFICATE OF SERVICE</u>

I, undersigned counsel, hereby certify that on this date, I filed this Petition for Writ of Habeas Corpus and all attachments using the CM/ECF system. I will furthermore send a courtesy copy via email to the office of the United States Attorney for the Western District of New York.

DATED:   August 5, 2025
              Washington, DC

*/s/ Sarah Decker*
Sarah Decker, Esq.
Staff Attorney
Robert F. Kennedy Human Rights
1300 19th Street NW, Suite 750
Washington, DC 20036
T:(646) 289-5593
E: decker@rfkhumanrights.org

*Pro Bono Counsel for Petitioner*



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BATAVIA IMMIGRATION COURT**

Respondent Name:

FIKADU, GHEBRESLASSIE

To:

Capps, Rosalie
45 Ellicott St.
Suite 1
Batavia, NY 14020

A-Number:

███████

Riders:

In Removal Proceedings
Date:

01/31/2024

## ORDER OF THE IMMIGRATION JUDGE

☒     This is a summary of the oral decision entered on 01/31/2024.    The oral decision in this case is the official opinion, and the immigration court issued this summary for the convenience of the parties.

☒     Both parties waived the issuance of a formal oral decision in this proceeding.

### I.    Removability

The immigration court found Respondent ☒ removable ☐ inadmissible under the following Section(s) of the Immigration and Nationality Act (INA or Act): 212(a)(7)(A)(i)(I); 212(a)(6)(A)(i)

The immigration court found Respondent ☐ not removable ☐ not inadmissible under the following Section(s) of the Act:

### II.    Applications for Relief

Respondent's application for:

A. Asylum/Withholding/Convention Against Torture
    ☐ Asylum was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice
    ☒ Withholding of Removal under INA § 241(b)(3) was ☒ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.
    ☒ Withholding of Removal under the Convention Against Torture was ☒ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.
    ☒ Deferral of Removal under the Convention Against Torture was ☒ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.
    ☐ Respondent knowingly filed a frivolous application for asylum after notice of the

consequences. *See* INA § 208(d)(6); 8 C.F.R. §1208.20

B. Cancellation of Removal

☐ Cancellation of Removal for Lawful Permanent Residents under <u>INA § 240A(a)</u> was

  ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.

☐ Cancellation of Removal for Nonpermanent Residents under <u>INA § 240A(b)(1)</u> was

  ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.

☐ Special Rule Cancellation of Removal under <u>INA § 240A(b)(2)</u> was

  ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.

C. Waiver

☐ A waiver under INA §   was

  ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.

D. Adjustment of Status

☐ Adjustment of Status under INA §   was

  ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice.

E. Other

The Court has granted the Respondent Withholding of Removal to Eritrea (under both sec. 241(b)(3) of the Act and the Convention Against Torture).

### III.    Voluntary Departure

☐ Respondent's application for ☐ pre-conclusion voluntary departure under INA § 240B(a)
☐ post-conclusion voluntary departure under INA § 240B(b) was ☐ denied.
☐ Respondent's application for ☐ pre-conclusion voluntary departure under INA § 240B(a)
☐ post-conclusion voluntary under INA § 240B(b) departure was ☐ granted, and

Respondent is ordered to depart by [ ]. The respondent must post a $ [ ]

bond with DHS within five business days of this order. Failure to post the bond as required or to depart by the required date will result in an alternate order of removal to

[ ] taking effect immediately.

☐ The respondent is subject to the following conditions to ensure his or her timely departure from the United States:

☐ Further information regarding voluntary departure has been added to the record.

☐ Respondent was advised of the limitation on discretionary relief, the consequences for failure to depart as ordered, the bond posting requirements, and the consequences of filing a post-order motion to reopen or reconsider:

If Respondent fails to voluntarily depart within the time specified or any extensions granted by the DHS, Respondent shall be subject to a civil monetary penalty as provided by relevant statute, regulation, and policy. *See* INA § 240B(d)(1). The immigration court has set

☐ the presumptive civil monetary penalty amount of $3,000.00 USD

☐ $ _____ USD instead of the presumptive amount.

If Respondent fails to voluntarily depart within the time specified, the alternate order of removal shall automatically take effect, and Respondent shall be ineligible, for a period of 10 years, for voluntary departure or for relief under sections 240A, 245, 248, and 249 of the Act, to include cancellation of removal, adjustment of status, registry, or change of nonimmigrant status. *Id.*

If Respondent files a motion to reopen or reconsider prior to the expiration of the voluntary departure period set forth above, the grant of voluntary departure is automatically terminated; the period allowed for voluntary departure is not stayed, tolled, or extended. If the grant of voluntary departure is automatically terminated upon the filing of such a motion, the penalties for failure to depart under section 240B(d) of the Act shall not apply.

If Respondent appeals this decision, Respondent must provide to the Board of Immigration Appeals (Board), within 30 days of filing an appeal, sufficient proof of having posted the voluntary departure bond. The Board will not reinstate the voluntary departure period in its final order if Respondent does not submit timely proof to the Board that the voluntary departure bond has been posted.

In the case of conversion to a removal order where the alternate order of removal immediately takes effect, where Respondent willfully fails or refuses to depart from the United States pursuant to the order of removal, to make timely application in good faith for travel or other documents necessary to depart the United States, to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper Respondent's departure pursuant to the order of removal, Respondent may be subject to a civil monetary penalty for each day Respondent is in violation. If Respondent is removable pursuant to INA § 237(a), then he or she shall be further fined or imprisoned for up to 10 years.

## IV.    Removal

☒ Respondent was ordered removed to    Germany.

☒ In the alternative, Respondent was ordered removed to    Eritrea.

☐ Respondent was advised of the penalties for failure to depart pursuant to the removal order:

If Respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper Respondent's departure pursuant to the order of removal, Respondent may be subject to a civil monetary penalty for each day Respondent is in violation. If Respondent is removable pursuant to INA § 237(a), then he or she shall be further fined or imprisoned for up to 10 years.

## V.    Other

☐ Proceedings were ☐ dismissed ☐ terminated with prejudice ☐ terminated without prejudice ☐ administratively closed.

☐ Respondent's status was rescinded under INA § 246.
☐ Other:

Immigration Judge: SCHULTZ, ERIC  01/31/2024

Appeal:    Department of Homeland Security:    ☒ waived    ☐ reserved
           Respondent:                        ☒ waived    ☐ reserved

Appeal Due:

**Certificate of Service**

This document was served:
Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service
To: [  ] Noncitizen | [  ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS
Riders:
By:  Lang, Erika , Court Staff
Date:  01/31/2024

U.S. Department of Justice

Immigration and Naturalization Service

HQCOU 50/1.1

Office of the General Counsel

*425 I Street NW*
*Washington, DC 20536*

APR 21 2000

MEMORANDUM FOR Regional Counsel
                   For Distribution to District and Sector Counsel

FROM:     Bo Cooper
          General Counsel

SUBJECT:  Detention and Release during the Removal Period of Aliens Granted
          Withholding or Deferral of Removal


          Section 241(a)(1) of the Immigration and Nationality Act (INA) establishes a 90-day
"removal period" that generally commences on the date a removal order becomes
administratively final.  Certain aliens are subject to mandatory detention by the INS during this
removal period.  This memorandum addresses the authority of the Immigration and
Naturalization Service (INS) under certain circumstances to release an alien who has a final
order of removal, and who has also been granted withholding or deferral of removal, before the
90 day removal period has expired.

          Under INA section 241(a)(2), once the removal period has begun, the INS may -- but is
not required to -- detain a non-criminal alien until removal is effected.  Section 241(a)(2)
generally requires the INS to detain all terrorists, all aggravated felons, and most other criminal
aliens during the removal period and during any extension of the removal period.  Please see
HQCOU's March 16, 2000 memorandum entitled " Detention and Release of Aliens with Final
Orders of Removal" for a more detailed interpretation of these provisions.  Under certain
circumstances, however, there is authority for the INS to release an alien who has been finally
granted withholding or deferral of removal when the INS is not actively pursuing the alien's
removal, even though the alien would otherwise be subject to mandatory detention.

          An alien who has been finally granted withholding of removal to a specific country under
INA section 241(b)(3), or who has been granted either withholding or deferral of removal to a
specific country under the Convention Against Torture, remains an alien who is subject to a final

Memorandum for Regional Counsel
Page 2


order of removal.  Generally, the INS may execute that order to any country other than the
country to which removal has been withheld or deferred.  Thus, if the INS is actively pursuing
removal to an alternate country, there is no authority during the removal period to release an
alien who is subject to mandatory detention.  The purpose of the removal period, however, is to
facilitate the execution of the removal order.  If, therefore, an alien has been finally granted
withholding or deferral of removal and the INS is not actively pursuing the alien's removal to an
alternate country, the INS has authority to consider the release of such an alien during the
removal period.  This means only that there is authority to consider release of such aliens; it does
not mandate their release.  The decision whether or not to release such an alien must take into
consideration all appropriate factors, including whether the alien poses a threat to the community
or flight risk.

1

*Office of the Assistant Secretary*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

FEB 9 2004

MEMORANDUM FOR: Anthony Tangeman
Deputy Executive Associate Commissioner
Office of Detention and Removal

FROM: Michael J. Garcia
Assistant Secretary

SUBJECT: Detention Policy Where an Immigration Judge has Granted
<u>Asylum and ICE has Appealed</u>

This memorandum reiterates the U.S. Immigration and Customs Enforcement (ICE) policy where the immigration court has granted asylum (or other protection relief, such as withholding of removal or protection under the Convention Against Torture) and ICE has entered an appeal of the decision which is pending before the Board of Immigration Appeals.

In general, it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge, absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law to detain.

For cases where a bond has been required but not posted, the bond should be reviewed following an immigration judge's grant of asylum so that an alien can be released in accordance with this ICE policy. Arriving aliens should be considered for parole.

In all cases, the Field Office Director must approve a decision to keep an alien granted protection relief in custody pending appeal, in consultation with the Chief Counsel. This review cannot be delegated beyond the Field Office Director or anyone acting in that capacity.

If you have any questions regarding this memorandum, please contact your local Chief Counsel.

cc: Victor Cerda
Acting Principal Legal Advisor

## Strait, Andrew R

**From:** ERO Taskings
**Sent:** Tuesday, March 06, 2012 12:15 PM
**Subject:** Reminder on Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal or CAT

*The following message is being sent on behalf of Gary Mead, Executive Associate Director, Enforcement and Removal Operations:*

**To:  Assistant Directors, Field Office Directors, Deputy Field Office Directors, and Assistant Field Office Directors**

**Subject:  Reminder on Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal or CAT**

This Field Guidance is sent as a reminder that the April 21, 2000 Immigration and Naturalization Service Memorandum by General Counsel Bo Cooper (*Detention and Release during the Removal Period of Aliens Granted Withholding or Deferral of Removal*) and the February 9, 2004 ICE Memorandum by Assistant Secretary Michael Garcia (*Detention Policy Where an Immigration Judge Has Granted Asylum and ICE Has Appealed*) are still in effect and should be followed.

The memorandum provides guidance that "[i]n general, it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge, absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law to detain." Protection relief includes asylum, withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, and withholding or deferral of removal under the regulations implementing U.S. obligations under Article 3 of the U.N. Convention Against Torture and Cruel, Inhuman or Degrading Treatment or Punishment, *see* 8 C.F.R. § 1208.16(d) – 1208.18.  This policy applies at all times following a grant of protection, including during any appellate proceedings and throughout the removal period.

Per the April 21, 2000 and February 9, 2004 Memoranda, the Field Office Director must approve any decision to keep an alien who received a grant of any of the aforementioned protections in custody.  This includes situations where the Office of the Chief Counsel (OCC) is appealing the grant of relief. Additionally, any decision to continue to hold an alien should be done in consultation with the local OCC.

Any questions should be directed to your local OCC.

NOTICE: This communication may contain privileged or otherwise confidential information. If you are not an intended recipient or believe you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use this information.  Please inform the sender that you received this message in error and delete the message from your system.

| | |
|---|---|
| **From:** | ICE Office of the Director |
| **Sent:** | Mon, 7 Jun 2021 13:41:47 +0000 |
| **To:** | Undisclosed recipients: |
| **Subject:** | REMINDER: Detention Policy Where an Immigration Judge has Granted Asylum, |

Withholding of Removal, or Convention Against Torture Protection, and DHS has Appealed

## A Message from Tae D. Johnson, Acting Director, U.S. Immigration and Customs Enforcement

**To All ICE Employees**
**June 04, 2021**

## REMINDER: Detention Policy Where an Immigration Judge has Granted Asylum, Withholding of Removal, or Convention Against Torture Protection, and DHS has Appealed

On February 9, 2004, then-Assistant Secretary Michael J. Garcia issued U.S. Immigration and Customs Enforcement (ICE) Directive 16004.1, Detention Policy Where an Immigration Judge has Granted Asylum and ICE has Appealed, establishing ICE policy favoring a noncitizen's release in instances in which ICE has appealed the decision of an immigration judge granting asylum, withholding of removal, or protection pursuant to the regulations implementing the Convention Against Torture (CAT protection). I am issuing this reminder to ensure that ICE personnel remain cognizant of and continue to follow this Directive, which supports our commitment to ensuring that our limited detention resources are utilized appropriately.

Pursuant to this longstanding policy, absent exceptional circumstances, such as when the noncitizen presents a national security threat or a danger to the community, or any legal requirement to detain, noncitizens granted asylum, withholding of removal, or CAT protection by an immigration judge should be released pending the outcome of any DHS appeal of that decision.

In considering whether exceptional circumstances exist, prior convictions alone do not necessarily indicate a public safety threat or danger to the community. Rather, the individual facts and circumstances of the case, including extensiveness, seriousness, and recency of the criminal activity, along with any evidence of rehabilitation, should be considered in making such determination.

Consistent with Office of the Principal Legal Advisor (OPLA) policy implementing ICE Directive 16004.1, OPLA attorneys are reminded that, in any detained case in which a noncitizen is granted asylum, withholding of removal, or CAT protection but DHS intends to appeal, Enforcement and Removal Operations (ERO) must be immediately advised of the protection grant so that the noncitizen may be immediately considered for release.

In instances in which a bond was set but not posted by the noncitizen, ERO should conduct a custody redetermination; additionally, "arriving aliens" should be considered for parole. Field

Office Director approval is required to continue detention for those affected noncitizens, and such decisions must be made in consultation with the local OPLA Field Location and appropriately documented.

Questions regarding ICE policy on this issue should be directed to the Office of Policy and Planning at ICEOfficeofPolicy@ice.dhs.gov through the chain of command and Directorate or Program Office leadership. Please note, however, that case-specific questions should be addressed by Directorate or Program Office leadership.


**Tae D. Johnson**
**Acting Director**
**U.S. Immigration and Customs Enforcement**

*Office of Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
250 Delaware Avenue, Floor 7
Buffalo, NY 14202



U.S. **Immigration**
and **Customs**
**Enforcement**

Fikadu, Ghebreslassie                                          A▇▇▇▇▇▇▇
c/o Immigration and Customs Enforcement
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 14020

### Decision to Continue Detention

This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file, consideration of the information you submitted to ICE's reviewing officials on March 1, 2024, and upon review of the factors for consideration set forth at 8 C.F.R. § 241.4(e), (f), and (g).

As explained below, after such review, ICE has determined to maintain your custody because:

- You have not demonstrated that, if released, you will not:

  - Pose a risk of flight.

ICE has made such determination based upon:

ICE records indicate that you are citizen and national of Eritrea who entered the United States at an unknown place, on an unknown date, without being inspected, admitted, or paroled by an immigration officer.

On March 13, 2023, the United States Border Patrol (USBP) arrested and served you a Form I-860, Notice and Order of Expedited Removal, pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). You expressed fear of return to Eritrea.

On March 16, 2023, the USBP transferred custody of you to Enforcement and Removal Operations (ERO) San Diego, who detained you at the San Luis Regional Detention Center in San Luis, AZ.

On March 19, 2023, ERO San Diego transferred custody of you to ERO New Orleans, who detained you at the Adams County Detention Center in Natchez, MS.

On April 7, 2023, the United States Citizenship and Immigration Services (USCIS) determined you to have a credible fear of returning to Eritrea and issued you a Form I-862, Notice to Appear, pursuant to section 212(a)(7)(A)(i)(I) of the INA.

Decision to Continue Detention
Fikadu, Ghebreslassie ▮▮▮▮▮▮▮                                          Page 2

On July 31, 2023, ERO New Orleans transferred custody of you to ERO Buffalo, who detained you at the Buffalo Federal Detention Facility (BFDF) in Batavia, NY.

On January 31, 2024, an immigration judge (IJ) granted you Withholding of Removal to Eritrea and ordered you removed to Germany. You waived your right to appeal.

On February 15, 2024, ERO Buffalo submitted a travel document request to the Government of Germany. This request remains pending.

Although you have provided ICE with some information regarding your equities in the United States. ICE believes that you may pose a significant risk of flight if you were released at this time. The Government of Germany has indicated it will issue a travel document for your return to Germany. The Department of Homeland Security's enforcement priorities continue to be threats to national security, public safety, and border security. As such, you are to remain in ICE custody pending your removal from the United States.

Based on the above, you are to remain in ICE custody pending your removal from the United States as ICE is unable to conclude that the factors set forth at 8 C.F.R. § 241.4(e) have been satisfied. You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to affect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 U.S.C. § 1253(a).

If you have not been released or removed from the United States at the expiration of the three-month period after this 90-day review, jurisdiction of the custody decision in your case will be transferred to the ICE Headquarters (ERO Removal Division), Potomac Center North, 500 12th Street SW, Washington, DC 20536. The ERO Removal Division will thereafter conduct a custody review and will make a determination regarding whether you will continue to be detained pending removal or may be released.

To assist in the ERO Removal Division custody review, you will be afforded a personal interview. You and your representative who has filed a Form G-28, Notice of Entry of Appearance, if any, will be notified of the date and time of the interview approximately 30 days prior to the scheduled interview date. This interview may be in person or through a video teleconference. If ERO needs to change the date of the interview, ERO will provide notice to you and your representative who has filed a Form G-28, Notice of Entry of Appearance, if any. You may be accompanied during the interview by a person of your choice, subject to security requirements at the detention facility, as long as this person is able to attend the interview at the scheduled time.

You may submit any additional documentation in English you wish to be considered in support of your release at the time of the interview or via mail service up to five business days prior to the scheduled time of your interview to the following address:

Decision to Continue Detention
Fikadu, Ghebreslassie ███████                                    Page 3

Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 14020

Such documentation should contain a cover letter indicating that the material is submitted in support of your Post Order Custody Review personal interview. An attorney or other person may submit materials on your behalf.

You are required to complete the below information.

**I do_____ do not_____ want a personal interview.**

**If you do want an interview, please check the appropriate box(es) below:**

☐    Check this box if you need an interpreter for your interview.
     Language/Dialect: _____

☐    I will be assisted at this interview by a representative of my own choosing.

     Name:_____

     If your representative has not filed a G-28, Notice of Entry of Appearance, on your behalf, you are responsible for notifying any other person you have selected to assist you of the date, time, and location of the interview. The representative must be at least 18 years of age.

You will be sent a separate Notice to Alien of Interview for Review of Custody Status approximately 30 days before the interview is scheduled. If you wish to request additional time to prepare for the interview, you must notify your deportation officer within five business days of receipt of the Notice of Interview. If ERO agrees to postpone the interview at your request, you will be deemed to have waived its completion prior to jurisdiction over your case transferring to the ERO Removal Division. You will be notified of the decision in your case when the custody review has been concluded by the ERO Removal Division.

_____         5-13-24
        KREDEN
Signature of Field Office Director, ERO/Designated Representative        Date

*Office of Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

FIKADU, Ghebreslassie                                      A██████████
C/O Immigration and Customs Enforcement
Denver Field Office

### Decision to Continue Detention

This letter is to inform you that the U.S. Immigration and Customs Enforcement (ICE) has
reviewed your custody status and determined that you will not be released from custody at this
time. This decision was based on a review of your file record, personal interview and
consideration of any information you submitted to ICE reviewing officials and upon review of
the factors for consideration set forth at 8 C.F.R. § 241.4(e), (f), and (g).

You are a native and citizen of Eritrea who last entered the United States on an unknown date
and unknown place, without being inspected, admitted or paroled by an immigration officer. On
January 31, 2024, you were granted withholding of removal to Eritrea and issued an Order of
Removal to Germany by an Immigration Judge. You waived your right to appeal.

ICE is currently working with the government of Germany to secure a travel document for your
removal from the United States. A travel document from the Government of Germany is
expected, and ICE has reason to believe there's a significant likelihood that your removal will
occur in the reasonably foreseeable future, therefore you are to remain in ICE custody at this
time, as ICE is unable to conclude that the factors set forth at 8 C.F.R. § 241.4(e) have been
satisfied.

This decision, however, does not preclude you from bringing forth evidence in the future to
demonstrate a good reason why your removal is unlikely. You are advised that pursuant to
Section 241(a)(1)(C) of the Immigration and Nationality Act (INA) you must demonstrate that
you are making reasonable efforts to comply with the order of removal, and that you are
cooperating with ICE efforts to remove you by taking whatever actions ICE requests to affect
your removal.

You are also advised that any willful failure or refusal on your part to make timely application in
good faith for travel or other documents necessary for your departure, or any conspiracy or
actions to prevent your removal or obstruct the issuance of a travel document, may subject you to
criminal prosecution under 8 USC § 1253(a).

**PAUL L
CAPICCHIONI**



Digitally signed by PAUL L
CAPICCHIONI
Date: 2024.10.10 12:17:49 -04'00'

10/7/24

Paul Capicchioni                                          Date
HQ RIO Chief

PLAINTIFFS' EXHIBIT NO. ___2___

CASE NO. ___PX 25-951___

IDENTIFICATION: ___JUL 1 0 2025___

ADMITTED: ___JUL 1 0 2025___

To All ICE Employees
July 9, 2025

**Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)**

On June 23, 2025, the U.S. Supreme Court granted the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Department of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025), which required certain procedures related to providing a "meaningful opportunity" to assert claims for protection under the Convention Against Torture (CAT) before initiating removal to a third country. Accordingly, all previous guidance implementing the district court's preliminary injunction related the third country removals issued in *D.V.D.* is hereby rescinded. Absent additional action by the Supreme Court, the stay will remain in place until any writ of certiorari is denied or a judgment following any decision issues.

Effective immediately, when seeking to remove an alien with a final order of removal—other than an expedited removal order under section 235(b) of the Immigration and Nationality Act (INA)—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, *Guidance Regarding Third Country Removals*, as detailed below. A "third country" or "alternative country" refers to a country other than that specifically referenced in the order of removal.

If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances. In all other cases, ICE must comply with the following procedures:

- An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.
- ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.
- ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.
  - Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.

- If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.
- If the alien <u>does affirmatively state</u> a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the alien within 24 hours of referral.
  - o USCIS will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal.
  - o If USCIS determines that the alien has not met this standard, the alien will be removed.
  - o If USCIS determines that the alien has met this standard and the alien was not previously in proceedings before the immigration court, USCIS will refer the matter to the immigration court for further proceedings. In cases where the alien was previously in proceedings before the immigration court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. In such cases, ERO will alert their local Office of the Principal Legal Advisor (OPLA) Field Location to file a motion to reopen with the immigration court or the Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under section 241(b)(3) of the INA and CAT for the country of removal. Alternatively, ICE may choose to designate another country for removal.

Notably, the Supreme Court's stay of removal does not alter any decisions issued by any other courts as to individual aliens regarding the process that must be provided before removing that alien to a third country.

Please direct any questions about this guidance to your OPLA field location.

Thank you for all you continue to do for the agency.


Todd M. Lyons
Acting Director
U.S. Immigration and Customs Enforcement


Attachments:

- U.S. Supreme Court Order
- Secretary Noem's Memorandum
- Notice of Removal